## LUDDEN *vs.* HAZEN.

Although the law tolerates a separation of the apparent from the real ownership of chattels in some cases, when the honesty of the transaction is made to appear, yet when the purposes for which the possession of property is delivered to a buyer are inconsistent with the continued ownership of the vendor, the transaction will be presumed fraudulent as against purchasers and creditors. The form of the transaction will be deemed to be colorable, and the title be held to have vested, absolutely, in the buyer.

H. purchased of the plaintiff a quantity of liquors for the purpose of stocking an unlicensed grocery, and gave a receipt therefor, specifying that the same were to remain the property of the seller until paid for; the liquors to be paid for when sold, or returned when called for. *Held* that the transaction

could not be upheld as a conditional sale; that by the contract of sale and the delivery of the liquors to H. to make a part of his stock in trade and to be retailed to his customers, the property vested in him, and became liable for his debts.

THE plaintiff brought trover, before a justice of the peace, for parts of two barrels of whisky and part of a keg of gin, seized and taken by the defendant as a constable, on an execution against one Hackett. The plaintiff claimed title as owner, and that the liquors were part of a large quantity which he had sold conditionally to Hackett, to become his when paid for. The residue of the liquor had, prior to the levy, been sold by the defendant at retail, contrary to law. The judgment under which the defendant justified was in favor of the commissioners of excise, for a violation of the excise law. The justice gave judgment against the defendant for the value of the liquors, and the county court of Oswego county affirmed such judgment on appeal, and the defendant appealed to this court.

*W. & L. J. Sanders,* for the appellant.

*Cromwell & Munn,* for the respondent.

*By the Court,* ALLEN, J. The running of an unlicensed grocery upon borrowed whisky is a new expedient by which a party may violate the laws and avoid pecuniary responsibility, and calls for a novel application of the doctrines incident to conditional sales of personal property. That personal property may be sold and delivered under an agreement for the payment of the price at a future day, and the title by express agreement remain in the vendor until the payment of the purchase price, is now well settled. Such payment is strictly a condition precedent, and until performance the property does not vest in the buyer. This is one of the cases in which the law tolerates a separation of the apparent from the real ownership of chattels, when the honesty of the transaction is made

to appear. But when the purpose for which the possession of the property is delivered to the buyer is inconsistent with the continued ownership of the claimant, the transaction will be presumed fraudulent as against purchasers and creditors. The form of the transaction will be deemed to be colorable, and the title held to have vested absolutely in the buyer. The principles of *Griswold* v. *Sheldon*, (4 *Comst.* 591,) as announced by Judge Bronson, are entirely applicable to a case of that character. That was the case of a mortgage of a store of goods, in which it was contemplated that the mortgagor should continue his business as a trader, and sell the goods as he had opportunity, to his customers, and deal with them in all respects as if he were the absolute owner; and Judge Bronson is of the opinion that the mortgage could not stand as against purchasers or creditors. (*And see Urick* v. *Smith*, 1 *Camp.* 332 ; *Paget* v. *Perchard*, 1 *Esp.* 205.) It is true that the court was divided in opinion, in *Griswold* v. *Sheldon*, upon the question whether the mortgage was void in law, but all agreed that the circumstance referred to was evidence of fraud. But in the case of a mortgage, the security is on file and the public have constructive and may have actual notice of it, while in the case of a conditional sale or delivery, there is nothing to inform the public that the apparent owner is not the actual owner. So that in the case of a conditional sale the dealing with the property, with the consent of the seller, in a manner utterly inconsistent with his rights as owner, would be much stronger evidence of fraud than in the case of a mortgage. The cases agree that if the condition is merely colorable, with intent to defraud, and protect the property from creditors, it is void. (*Per Nelson, Ch. J. in Strong* v. *Taylor*, 2 *Hill*, 326 ; *per Bigelow, J. Coggell* v. *Hartford and New Haven Rail Road Co.* 3 *Gray*, 545 ; *per Wilde, Ch. J. Barrett* v. *Pritchard*, 2 *Pick.* 512.) The justice having, upon the evidence, found that the sale was conditional, that fact must be considered as established, although the resort to a fraudulent document, by the plaintiff, to support his title, cast suspicion upon

the whole case. The document got up with a view to the suit after the levy by the defendant, and which the plaintiff swears explains the agreement made at the time, is a receipt signed by Hackett, the defendant in the execution, in these words :

" *Camden, March* 5, 1859.

Received of Martin Ludden 2 bbls. of whisky, each 42 gallons, 84 in all, at 30 cts. per gallon, . . $25 20

10 gallons gin, at 10/ . . . . , 12 50

2 empty barrels, each 8/ . . . . . 2 00

2 empty kegs, each 8/ . . . . . 2 00

$41 70

The above gin to remain the property of said Ludden until paid for, said gin to be paid for when sold, or returned when called for. (Signed) WILLIAM HACKETT."

A literal reading of the receipt would only entitle the plaintiff to demand a release of the goods on the failure of Hackett to pay for them when sold, which would be rather late, as then the title would have vested in the purchaser. But the receipt contemplates a sale of the goods by Hackett, and the evidence shows that it was understood that the liquors were bought by Hackett to start a grocery and to be retailed to the customers. The retaining of the renewed ownership by the plaintiff was a mere farce, and could have served no honest purpose. It is evident that Hackett was not to sell as agent of the plaintiff, or on commission, but was to deal with the goods as his own, the title, as against creditors and purchasers, vesting in Hackett absolutely.

But the principle of conditional sales, aside from the fraud, which is very apparent, will not uphold such sale when the property is to be delivered to the buyer for consumption or for sale, or to be dealt with in any way inconsistent with the ownership of the seller, or in a manner which would necessarily destroy his lien or right of property. The buyer is in all other cases treated as a lessee or bailee, and with only the rights which would attach to lessees or bailees. In *Herring* v.

*Willard*, (2 *Sand. S. C. R.* 418,) the article sold was an iron safe, and Oakley, Ch. J. said it was exactly the case of leasing personal property with an agreement to sell it at a future time on receiving a stipulated price, and then adds : "It is not the case of an article placed in the hands of one who keeps similar articles for sale, as goods deposited with a merchant or trader." Thus indicating the distinction which would exclude this case from the principles relied upon. *Strong* v. *Taylor*, (*supra*,) was the case of a canal boat. Nelson, Ch. J. lays stress upon the fact that the buyer was "to use the boat for the purpose of paying for it in pursuance of the terms agreed on." He was not at liberty to deal with her as his own. *Barrett* v. *Pritchard* was the case of a sale of wool to be manufactured by the buyer, and the manufacturer neither destroyed the wool nor its identity, and hence the sale was consistent with the continuing of the lien or ownership of the seller. The judge says, " The creditors of King [the purchaser] had no reason to believe him the owner of the wool, unless they were informed of the sale ; for the possession of it for the purpose of manufacturing was an evidence of property." Can the same be said of whisky dealt out at a grocery ? In *The Dresser Manufacturing Company* v. *Waterston*, (3 *Metc.* 7,) the printing cloths which were the subject of the sale were delivered to the buyer to be printed and forwarded to a third person, whose acceptance was to be given on payment; a disposition entirely consistent with the seller's lien. The cloths were printed and going forward as theirs, and the fact is remarked upon by the judge in giving the opinion of the court.

This transaction cannot be upheld as a conditional sale. By the contract of sale and the delivery of the liquors to Hackett to make a part of his stock in trade and to be retailed to his customers the property vested in him and became liable for his debts. The judgment of the county court and of the justice must be reversed.

[ONONDAGA GENERAL TERM, April 3, 1860. *Allen, Mullin* and *Morgan*, Justices.]