## BONESTEEL *vs.* FLACK and GLYNN.

A bill of sale in this form: "Mr. W. H. bought of B. S. & Brother," naming the articles purchased, and stating the price of each, signifies—especially when read in connection with the fact that the property was delivered under it—that B. S. & Brother have *sold* to H. the articles named, at the prices given.

Such an instrument—when not made and delivered as a receipt, but to show and evidence the terms of sale, by specifying the species, quantity and quality of the several articles, with the prices, and when it declares, on its face, a sale of the property—if accompanied by a delivery and acceptance of the property, becomes the evidence of the transfer of the title; and it cannot be contradicted by parol evidence that the transaction was not a *sale*, but only a *bailment*.

Where liquors are delivered by liquor merchants, to a tavern keeper, to be by him retailed, the title to the property to remain in the liquor merchants until the property is sold, the liquors are liable to seizure and sale under executions issued against the tavern keeper.

APPEAL by the plaintiffs from a judgment of nonsuit, ordered at the circuit. The material facts appear in the opinion of the court.

*Sawyer & Russell*, for the appellants.

*Myers & Magone*, for the respondents.

*By the Court*, BOCKES, J.   The plaintiffs claimed to recover the value of a quantity of liquors seized and sold by the defendant Glynn on execution, in favor of the defendant Flack, against one William Hubbard.   No question is made in regard to the judgment or execution, nor is it pretended that the defendants were not jointly liable in the action if the liquors belonged to the plaintiffs.   It was insisted on the trial, on the part of the defendants, that the proof showed the title to the property to be in Hubbard, the judgment debtor.   The judge, on considering the whole case, nonsuited the plaintiff and dismissed the complaint.

The plaintiffs were liquor dealers in Troy, and delivered the property in controversy to Hubbard, a tavern keeper in

St. Lawrence county, who at the time of its seizure was re-tailing it at his bar.   The plaintiffs insisted that the liquors were consigned to Hubbard on.commission, not on sale ; and that , the. title .was to remain in them until disposed of by Hubbard.   Evidence was given tending to substantiate this position.   It appeared that the liquors were delivered under a written .bill of sale, without qualifying terms.   Hubbard swore that "it :was a regular bill of so much liquor, at so much per gallon, with no other qualification that he remem-bered." The plaintiffs, on the defendants' call, produced their invoice, doubtless a counterpart or copy of the bill sent to Hubbard,, which, omitting dates and immaterial adver-tising matters, was as follows :

"Mr. William Hubbard, ·

         Bought of Bonesteel, Squires & Brother."

Then. followed the list of six items, with the number of gal-lons and prices carried out, in the aggregate amounting to $181.93.

By granting a nonsuit the. learned judge held either that the evidence established a contract of sale in writing which could not be contradicted or .varied by. parol proof, .or that the property was liable to seizure under execution against Hubbard, even if, the sale and . delivery were qualified and subject to .the condition claimed by the plaintiffs.

. The. first question then ·is, whether it appears from the written bill that the title passed from the plaintiffs to Hub-bard.   Does· the written bill establish a contract of sale ? If ,so, .then· it is conclusive, for no citation of authorities is needed. in ·support of the proposition, that parol evidence is inadmissible. to contradict or vary a written ·instrument. The bill of sale is unambiguous, and even if it fails to state the whole contract or transaction, it clearly declares a sale. It reads "Bought of ·Bonesteel, Squires & Brother,". naming the articles and stating the price of each.   Its plain signifi-cation—especially when used in connection with the fact

that the property was delivered under it—is that the plaintiffs had sold to Hubbard the articles named, at the prices given. This the bill of sale distinctly asserts, and this the plaintiffs proposed to contradict by parol proof; for they sought to show that there was no sale to Hubbard—only a bailment—a mere delivery to him for sale as their factor and agent. The general remark that a receipt may be explained and contradicted by parol is subject to qualification. In *Egleston* v. *Knickerbacker*, (6 *Barb.* 458,) it was held that a receipt could be explained by parol proof, when the explanation was not contradictory of it; and it was there further decided that a receipt absolute in its terms could not be shown by parol evidence to be upon condition,' except on a proceeding to reform the instrument for fraud or mistake. This case was referred to and the decision approved in *Coon* v. *Knap*, (8 *N. Y. Rep.* 402,) and the rule was reiterated— it had been before well established—that in so far as a receipt partook of the nature of a contract, it fell within the rule excluding parol proof to contradict or explain it. In *Filkins* v. *Whyland*, (24 *Barb.* 379,) it was decided that a bill of sale in form like this, but executed by the vendor, specifying the price and acknowledging its receipt, was to be construed as being a receipt for the purchase money, and that parol evidence of an oral warranty was therefore admissible. This decision was affirmed in the court of appeals. (24 *N. Y. Rep.* 338.) In the case cited it was not proposed to contradict the instrument. The proof of a warranty was entirely consistent and in consonance with it. The case of *Filkins* v. *Whyland* differs, too, from the one under consideration in this. There the paper was given to evidence the receipt of the purchase money. Not so here. In this case it was not made and delivered as a receipt, but to show and evidence the terms of sale; that is, to show the different kinds of liquor; the number of gallons of each and the prices, and on its face declared a sale by the plaintiffs to Hubbard. The property was delivered and accepted under it. It was

competent to prove by parol the delivery and acceptance under it, for such evidence in no degree conflicted with the terms of the written instrument. Where a contract rests partly in writing and partly in parol, oral proof is admissible to supply the deficiency in the writing. (25 *Wend.* 417. 3 *Hill,* 171–6. 2 *Hilton,* 184.) But in these cases the oral proof is not in contradiction and wholly destructive of the plain import and effect of the paper. Three things only are necessary to constitute a sale; a thing to be sold, a stipulated price and the consent (duly given) of the parties. It has been well stated that any words importing a bargain, whereby the owner of a chattel signified his willingness and consent to sell, and whereby another person shall signify his willingness and consent to buy *in presenti,* for a specified price, would be a sale and transfer of the right to a chattel. Here the owners signified in writing their consent to sell the property, naming the articles and prices, and the vendor accepted them at the prices given, pursuant to the bill. The writing was not delivered as a receipt, as was the case in *Filkins* v. *Whyland,* but was given to evidence the transaction in pursuance of which the property was delivered, and with the change of the possession of the property, became the evidence of the transfer of the title. This distinction is marked and commented on by Judge Selden in *Terry* v. *Wheeler,* (25 *N. Y. Rep.* 523.) He says, in substance, that when such a paper is delivered as a memorandum of a sale, (not as a receipt of payment of the purchase price,) it will be the evidence of a contract, not open to contradiction or explanation by parol.

In the case at bar the parol evidence flatly contradicts the writing, which under any aspect of the case was part and portion of the contract under which the property was delivered. The paper asserts a sale to Hubbard, without condition or qualification. It purports to transfer to and vest the title in him. In this respect it differs widely from *Herring*

v. *Hoppock*, (15 *N. Y. Rep.* 409,) in which case the instrument declared that the title did not pass until performance of the conditions by the vendee.  Here the parol proof is to the effect that there was no purchase by or sale to him—that the property was delivered to Hubbard as an agent of the plaintiffs.  In this way they sought to establish a special bargain, quite inconsistent with the plain import of the paper.  In my judgment the learned judge was right in · holding to the paper as the evidence of the transaction under which the plaintiffs parted with the property to Hubbard.

The plaintiffs' counsel is quite correct in saying that they cannot be divested of their property without their consent.  This proposition is asserted in a great number of cases; nor does it need the sanction of authority for a principle so plain and just.  But it is made to appear, as we have seen, that the plaintiffs gave their consent to the transfer, as is evidenced by the written bill of sale under which the property was delivered, and which cannot be countervailed by oral proof.  The case stands the same as if the parol proof, that the liquors were consigned to Hubbard to be sold for the plaintiffs, and as their property, in Hubbard's tavern by retail, was stricken out.  This cannot be allowed, to contradict the written evidence of the transfer of the title to Hubbard.

I do not discover that the incompetent evidence was excluded or expunged by any order entered in the proceedings at the trial.  While I think this would have been the better mode of trial, still it was probably unnecessary.  It was the duty of the court to disregard the parol agreement if inconsistent with and contradictory to the writing.  This was held in *Durgin* v. *Ireland*, (14 *N. Y. Rep.* 322.)  Judge Denio says that in such case, if the parol agreement be proved, it is still the duty of the court and jury "to give effect to the writing in opposition to the verbal contract, on the ground that whatever the parties may have said, they had fixed upon ·

the writing as the exponent of their views." He adds, "so although the judge erred in admitting the parol evidence, it is not necessary for him to commit the further error of giving to it a controlling effect over the writing, which still remained the only authentic evidence of the bargain." On the whole, I am satisfied that the learned judge was right in holding that the evidence showed a transfer of the title to the property, rather than a bailment.

There is another view of the case, decisively against the plaintiffs' right of action. Concede that the liquors were delivered by the plaintiffs, liquor merchants in Troy, to Hubbard, a tavern keeper in St. Lawrence county, to be by him retailed at his bar, and that the title was to remain in the plaintiffs until sold, were not the liquors liable to seizure and sale under execution against Hubbard? The case of *Ludden* v. *Hazen* (31 *Barb.* 650) seems conclusive of this question. In the case cited the gin was delivered under a written receipt, stating that it was to remain the property of the plaintiff until paid for, and to be paid for when sold, or returned when called for. In the case at bar, according to the plaintiffs' claim, the liquors were to remain the plaintiffs' property until sold, to be paid for when sold, and the plaintiffs had the right to take them away at any time. It will be seen that the contracts are precisely alike. In *Ludden* v. *Hazen* it was held that when the purpose for which the possession of the property is delivered to the buyer is inconsistent with the continued ownership of the claimant, the transaction will be presumed fraudulent as against purchasers and creditors. In this case it was said that in such case the form of the transaction will be deemed to be colorable and the title held to have vested absolutely in the buyer; that inasmuch as the party was to deal with the goods as his own, the title as against creditors and purchasers vested absolutely in him. Admitting, therefore, that the arrangement was such as the plaintiffs claim it to have been, the property was

liable to be levied on and sold under execution against Hubbard.

The nonsuit was properly ordered, and the judgment entered thereon must be affirmed.

[SCHENECTADY GENERAL TERM, January 5, 1864. *Potter, Bockes* and *James,* Justices.]