Brown *v.* Thurber.

New York Marine Court.

ARTHUR  A.  BROWN  *against*  HORACE K. THURBER, ET AL.

*Trial Term, December*, 1879.

The law as to conditional sales defined.  The general rule is that when a chattel is delivered to one who has bargained for the purchase thereof, and agreed to pay therefor at a future day, under an

express contract that no title is to vest in him until payment, the property of the vendor is not divested, and the purchaser takes, at most, only a right by implication to the use of the chattel, until default in the stipulated payment. But the principle of conditional sales will not uphold such sale when the property is delivered to the buyer for consumption or for sale or to be dealt with in any way inconsistent with the ownership of the seller, or in a manner which would necessarily destroy his right of property.

*Brown & Estes*, for plaintiff.

*Nelson Smith & E. More*, for defendants.

The facts sufficiently appear in the charge.

*Judge McAdam's Charge to the Jury.*

GENTLEMEN : This is what the law terms an action of trover for the conversion of certain stock ale.

The action was originally brought by Arthur A. Brown as plaintiff, and in consequence of an assignment made by him prior to his death (which occurred after the second trial of this action), it has been continued in the name of his wife as assignee of the cause of action, subject to all the rights and equities belonging or open to the original plaintiff. The action has, as you have already heard, been twice tried, has been twice before the general term of this court, twice before the general term of the court of common pleas, and once before the highest judicial tribunal in the State— the court of appeals, at Albany. This circumstance neither adds to, nor takes from the rights of either of the litigants, and I refer to it simply because it gives an importance to the case which it might not otherwise have obtained, and, therefore, invites at your hand a careful consideration to the end that the litigation may, if possible, be brought to some satisfactory conclusion. I have adverted to these facts, for they form part of the history of the case, and are material

only in so far as they may tend to exact from you the exercise of your patient, calm, deliberate and best judgment, in deciding and disposing of the questions involved, which I will endeavor to present in as clear and concise a manner as the nature and magnitude of the case will permit.

In the first place I charge you that before you can find for the plaintiff, you must be satisfied of two things :

*First.* That the property in dispute was taken by or through the agency of the defendants and by their direction.

*Second.* That at the time of the taking, it belonged to and was owned by Mr. Arthur A. Brown, the original plaintiff.

If you find on these two propositions in favor of the plaintiff, you will then have to assess the damages sustained by the plaintiff's assignor by reason of such wrongful taking, and these damages are limited to the value of the property at the time of the taking, with lawful interest to the time of trial added thereto. But if, on the other hand, you find that at the time of the taking, the property did not belong to Mr. Arthur A. Brown, the original plaintiff, but that it belonged to Michael Healy, whose name you have heard mentioned in connection with it, you will find a verdict in favor of the defendants, without troubling yourself with the other questions involved, which hinge upon this question of title ; because, if Mr. Brown was not the actual owner at the time of the alleged taking, the defendants cannot be called to account by him for any of their acts, and the plaintiff is without any cause of action. The defendants, in their answer, after denying any wrongful taking of the property by them, plead the recovery of a judgment by them against the before-named Michael Healy in the first district court, the issuing of an execution thereon in due form to one

Contrell, a city marshal, and a levy by him as such marshal upon said property while in the possession of said Healy. If Healy had any leviable interest in the property, the marshal had a legal right to levy upon it, and the defendants, as the plaintiffs in the execution, incurred no liability by reason either of such levy, or the removal of the property under and by virtue of it. You will have perceived then that the main question involved in this controversy, which you are called upon to determine, therefore is, who owned the property taken at the time of the seizure and removal? Was the title to it and ownership of it in Brown or were they in Healy? If in Brown, the marshal had no right to seize it, and the defendants are liable, if they directed him to take it. If in Healy, the marshal not only had the right, but it was his official duty under his execution to take it and dispose of it by sale in the usual manner, and, as I remarked before, the plaintiff —if the title was in Healy—has no cause of action whatever.

This brings us directly to the question of title, and this problem requires some elucidation as to the facts, as well as to the law. The evidence shows that Arthur A. Brown, the original plaintiff, a brewer by occupation, delivered into the cellar of the said Michael Healy eighteen casks of stock ale, upon obtaining from Healy a receipt in these words, signed by Healy, and countersigned by the carman making the delivery :

"Brooklyn, May 1st, 1872.

"Received from the Long Island Brewery, Nos. 83, 85, 87 and 89 Third avenue (to remain the property of A. A. Brown, until paid for), eighteen casks of ale—stock.

"Mike Healy.

"Michael Healy.

(Signed) "John Walsh, Carman."

It is conceded that the ale was brewed by the plaintiff, and that it was his property up to the time of the deposit in Healy's cellar, and it is also conceded that Healy paid Brown nothing for the ale in dispute.

The defendants, who are judgment creditors of Healy, claim under this writing and the circumstances attending it, that Healy became the owner of the ale, and that they, as his judgment creditors, were justified in levying upon and selling it for the purpose of satisfying their judgment. The plaintiff, in explanation of the transaction with Healy, claims that fresh ale is manufactured, sold and used within a short time after being brewed, while ales like those delivered to Healy, required to be stored in some place until they became aged, or in other words, until they go through some chemical process, caused by their own action and the lapse of time, whereby they become seasoned and fit for use, and that this process occupies from six months to two years in bringing about the proper result. That to save the expense of storage room in his own premises, Brown availed himself of the opportunity afforded by retail dealers, of storing ales in their cellars or vaults until they became fit for use, and until an opportunity for a sale offered itself.

[Now, if you find that these ales were merely left by Mr. Brown on storage in Healy's cellar ; that they were not sold to Healy ; that Healy had no right to use the ales without first purchasing each cask, as he required it for his use ; then it is clear that the transaction was what the law calls a bailment of the class known as *depositum*.] That is, a simple delivery or deposit of goods to be kept and returned without recompense, or, in the language of Judge STORY, "a delivery in trust for some special object or purpose, and upon a contract, express or implied, to conform to the object of the trust." If the transaction was merely such a bailment, or, in other words, it was not a sale, then the plaintiff's

assignor did not part with his title. The property was his when the marshal took it away, and the defendants are liable for his acts, if they directed him to take it.

Although the receipt or contract signed by Healy does not in express terms authorize a sale or use of the ales by Healy, the transaction, as had between Brown upon the one hand, and Healy upon the other, is nevertheless open to all evidence showing or tending to prove its true character and purpose. The defendants are judgment creditors of Healy, and are not to be concluded by forms or writing, and are at liberty to show the truth, whatever it may be, respecting the transaction in question. The defendants have availed themselves of this liberty, and have attempted to attack the transaction as a fraud upon them and the creditors of Healy generally, and claim that the writing exacted from Healy was an attempt to hinder, delay and defraud creditors, and to cover up and conceal the true title ; so that while the property was practically Healy's for every other purpose, it was to be Brown's for the purpose of keeping off Healy's creditors You are to find whether the defendants have succeeded in proving this defense or not. If they have, they are entitled to your verdict. The defendants also claim that Healy was a retail dealer, and had the right, under his contract with Mr. Brown, to retail this ale over the counters of his store ; that it was to form part of his stock in trade, as a retail dealer, and was to be retailed and drank over his bar. If you find this to be the fact, the defendants will be entitled to your verdict, because any such right in Healy to sell and dispose of the ale at pleasure, is inconsistent with an outstanding title in any one else. Mr. Brown could not permit Mr. Healy to deal with the property as his own, to retail it at pleasure to his customers ; and at the same time to retain his title to it ; the existence of two such conflicting rights is incompatible and impossible. If the ales were Brown's, then

Healy had no right to use them as his own. If they were Healy's, Brown had no title to them. You will have observed, therefore, that the question, whether the title was in Brown or in Healy, depends upon a very fine distinction, which, although perhaps difficult to understand on first impression, nevertheless exists in this case, either in favor of, or against Brown, according to your finding of the facts. [If you find that Mr. Healy had no right to use any cask of ale without first purchasing or ordering such cask, or without first obtaining the liberty of using the contents of such cask, the purchase, the ordering or the use of such cask, under such circumstances, would not divest Brown of any title he had to the remaining casks, unless he had by his previous acts or conduct disposed of them.] I mean to be understood as saying, that if, notwithstanding the fact that the ales were stored in Healy's cellar, you find that he had no right, under his agreement with Brown, to use even a single cask without special permission, that the obtaining of such permission to use one cask would not extend to all, if such construction was contrary to the understanding and intent of the parties. One way, perhaps, of ascertaining the relative positions of Healy and Brown, in respect to these ales, is to consider whether, if Brown, after putting the ales into Healy's cellar, had the right under his agreement, to go there at any time afterwards and take them away. If he had, that may have a tendency to show that he had not parted with all his right to them. While, on the other hand, if he had no such right, that would have the opposite tendency of showing that he had no title left.

In order to avoid any question as to the law, I propose to read it directly from the books, giving the volume and page, so that the counsel may understand intelligently whether to find fault with it or not. In Herring v. Hoppock, 15 N. Y. 409, which was an action

for the conversion of an iron safe, delivered under a conditional sale contract, the court of appeals, according to the syllabus of the case, held as follows : " When a chattel is delivered to one who has bargained for the purchase thereof, and agreed at pay therefor at a future day, under an express contract that no title is to vest in him until payment, the property of the vendor is not divested, and the purchaser takes, at most, only a right by implication to the use of the chattel, until default in the stipulated payment." The above rule was applied to a safe.

The following rule was applied by the court of appeals to a consignment (Cole *v.* Mann, 62 *N. Y.* 1): " Where the owner of the property consigns it to another, under an agreement that, when paid for, it shall become the property of the consignee, the title does not pass to the latter until the condition is complied with, and it is not liable to levy and sale under execution against him."

So much for this general rule ; now let me give you another. Chief Justice TILGHMAN, in Martin *v.* Mathot, 14 *Serg. & R.* 215, says : " Possession of personal property is the great mark of ownership. It is almost the only index which the world in general has to look to. But there are exceptions. There are certain necessary and lawful contracts by which the owner parts with the possession, and yet fraud cannot be presumed. Such as the contracts of lending and hiring, both very useful, and without which society could not well exist. It is of the essence of these, that the owner should give up the possession for a time. Such too are contracts by which an artisan or manufacturer has the possession of materials belonging to another for the purpose of making them up, or repairing them for the owner. No suspicion of fraud can fairly arise where the transaction is in the usual course of business. But the case is very different where it is intended that the property should be apparently in one, while it is, in fact, in an-

Brown *v.* Thurber.

other. This is out of the usual course of business, unnecessary, and directly tending to the injury of those who are not in the secret."* In Ludden *v.* Hazen, 31 *Barb.* 650, Judge ALLEN, in delivering the opinion of the court, said, "That personal property may be sold and delivered under an agreement for the payment of the price at a future day, and the title, by express agreement, remain in the vendor until the payment of the purchase price, is now well settled. Such payment is strictly a condition precedent, and until performance, the property does not vest in the buyer. But," continues the learned judge, "the principle of conditional sales will not uphold such sale when the property is to be delivered to the buyer for consumption or for sale, or to be dealt with in any way inconsistent with the ownership of the seller, or in a manner which would necessarily destroy his lien or right of property." This distinction is a marked one, and the one I have already cautioned you to remember.

In conclusion, gentlemen, let me say, that complicated as this case may seem, the law seeks for and must get at the truth, and while it attempts to protect the true lawful owner of property by indemnifying him from any unlawful interference therewith, it in like manner shields those in the right from evil consequences.

Now if, upon the whole case, you find from the evidence that the property claimed belonged to Arthur A. Brown, at the time the marshal carried it away, that Brown had not sold it to Healy, and had not by any act inconsistent with his ownership, conferred upon Healy the indicia of title and of ownership, that there was no fraud in the transaction, no effort to hinder, delay or defraud creditors, and nothing in it that produced that result, it will be your duty to find a ver-

---

* The rule in reference to conditional sales which prevails in Pennsylvania differs from that established in New York.

Brown *v.* Thurber.

dict in favor of the plaintiff, for $238, the value of the property at the time of the taking, and to add the interest thereto ; that is, provided you find that the property was taken by the defendant's direction. If, on the other hand, you find these facts in favor of the defendants, they, and not the plaintiff, will be entitled to your verdict.

The defendants' counsel thereupon duly excepted to the whole charge generally, and especially to the two parts thereof embraced in brackets.

The plaintiff's counsel thereupon requested the court to charge the jury as follows :

*First.* That the jury cannot find a verdict in favor of the defendants in this action, unless they find that the entire twelve casks of ale were actually the property of and owned by Healy at the time of the levy and sale by Thurber.

THE COURT.—I decline to charge this proposition. The language employed is too general, and is not properly qualified as to judgment creditors.

*Second.* That if Healy took and used any of the ale contrary to the agreement and understanding he had with A. A. Brown, and without any authority, knowledge upon the part of, or consent by Brown, the fact of such taking and use by Healy should not prejudice the plaintiff's title.

THE COURT.—I so charge. To which defendants' counsel then duly expected.

*Third.* If the jury believe that A. A. Brown, needing more storage room than he had, in good faith put this ale in the cellar of Healy for that reason, and for the reason that when it became fit for use, Healy might buy it of him, by first paying for it, and that the arrangement and agreement was made in good faith, and without any intention of passing the title to Healy,

and without any understanding or agreement that Healy was to have the right to use it as if it were his own, without first paying for it, and it remained there, with that understanding, then the title did not pass to Healy, and the defendants have no right to sell it.

THE COURT.—If there was no sale to Healy, I charge you that this proposition is correct.

The defendants' counsel excepted generally to this construction, and specifically as to the part in reference to storage.

*Fourth.* That if the jury believe A. A. Brown stored the ale with Healy, with the privilege to Healy, to become the owner by first paying for it, and that this arrangement existed at the time of sale by Thurber, the plaintiff is entitled to recover.

THE COURT.—Yes, if there was no sale, this proposition is correct.

*Fifth.* If the jury believe from the evidence that the ale was stored in Healy's cellar, and that it was agreed that Healy might take one cask, and only one, and use it, and then by the agreement was to pay for that before he had any right to take or use any more, and the transaction was a good faith one between Healy and Brown, then the title to this ale did not pass to Healy.

THE COURT.—If there was no sale, this proposition is correct, to which the defendants' counsel excepted.

*Sixth.* That if the jury believe from the evidence that Healy had no permission or right to take or use more than one cask without first paying for that one cask, and all the others were to remain the property of A. A. Brown till this one was paid for, and the agreement was made in good faith, the title to the ale in question did not pass to Healy.

THE COURT.—If there was no sale to Healy, this proposition is correct.

To which the defendants' counsel excepted.

*Seventh.* It is a question for the jury whether the title and ownership of the twelve casks of ale in question remained in Brown, and they have a right to consider as bearing upon that question the receipt or written contract put in evidence, and the testimony [that Brown kept a large share of his ale in his customers' cellars, and the testimony that stock ale requires to lie a long time] to fit it for use, together with the other evidence on the question, and if the jury believe from the evidence that it was the intention of the parties that the title should remain in Brown, and no right or permission was given Healy to take it, till it was paid for, except to the extent of one cask, then the plaintiff is entitled to a verdict.

THE COURT.—I so charge, provided the jury find nothing in the transaction operating as a fraud upon creditors.

To which defendants' counsel excepted generally, and to the parts inclosed in brackets defendants excepted especially.

*Eighth.* That if the jury believe A. A. Brown put this ale in Healy's cellar under the agreement of May, 1872, and gave him no right or privilege to use the ale in suit without first paying for it, and that Healy had no privilege or permission from Brown to use more than one cask before he paid for that cask, they have a right to find that the twelve casks belonged to Brown, and render a verdict for the plaintiff.

THE COURT.—I so charge, that is, provided there was no sale and no subsequent waiver of the conditions.

To which the defendants' counsel also excepted.

*Ninth.* It is a question for the jury whether A. A. Brown agreed to let Healy take and use these twelve casks of ale, and all of them, at any time he pleased, and dispose of them, without first paying for them, and if they believe he did not so agree, and that Healy had no such right, then the plaintiff is entitled to recover of the defendants.

THE COURT.—I so charge, provided there was no sale, and nothing in the nature of the transaction operating as fraud on creditors.

· To which defendants' counsel also excepted.

*Tenth.* If the jury believe from the evidence, that it was agreed that Healy might take and sell one cask of this stock ale, and only one, until he had paid for it, they have a right to find from the evidence, if they believe it to be the fact, that the balance of the ale remained and continued the property of A. A. Brown, and if they believe and find this from the evidence, the plaintiff is entitled to recover. ·

THE COURT.—I so charge, provided there was no sale and no agreement formed different' from that stated, and nothing operating as a fraud on creditors.

To which the defendants' also excepted.

Defendants requests' to charge :

*First.* If the jury shall find that it was agreed between Brown and Healy before, at, or after the date of the receipt, May 1st, 1872, that Healy was to have the right to tap and sell the ale at retail in his business without prepayment, that defendants are entitled to a verdict.

THE COURT.—I so charge.

*Second.* That in determining the question they are not controlled by the receipt or writing, but may consider the conduct of the parties, and what was said before, at and after May 1st, 1872.

THE COURT.—I so charge.

*Third.* That if Brown sold the ale to Healy to be sold by him in his business at retail without prepayment, and took the receipt to keep Healy's creditors from seizing it, the title vested in Healy as to such creditors, and defendants are entitled to a verdict.

THE COURT.—I so charge.

*Fourth.* That if, after May 1, 1872, and between that time and the levy, Healy asserted the right to and did tap and sell at retail six casks and a part of a seventh without prepayment, and Brown was conversant of that fact and acquiesced in it, and received money from Healy on account, from time to time, that defendants are entitled to a verdict.

*Fifth.* That if Healy, between the first of May, 1872, and the levy, sold from time to time at retail a large portion of said ale with Brown's knowledge and acquiescence, and Brown collected money from time to time on account of such sales, the defendants are entitled to a verdict.

THE COURT.—I so charge.

*Defendants' further requests to charge.*

The question whether Mr. Brown had sufficient room in his brewery for the purpose of storing his ales, is entirely immaterial in this case, and you will disregard all the testimony on that point.

THE COURT.—I so charge.

Defendants' third series of requests to charge:

I. That if the ale was delivered by Arthur A. Brown to Healy as purchaser, to be sold by him at retail, in the course of his business, on the understanding that Brown should remain the owner until he was paid for the same; that such an agreement for Brown's continued ownership was fraudulent as to the defend-

ants, as creditors of Healy, and that the marshal had the right to seize the ale under the execution.

THE COURT.—I so charge.

II. That if the ales were delivered to Healy to be by him sold at retail in the course of his business, on the understanding that Brown should remain the owner until the ale was paid for, such an agreement would not prevent the title from passing, and in that case the plaintiff is not entitled to recover for the ale.

THE COURT.—I so charge.

III. That the question for the jury is, to determine what the contract was between Brown and Healy. If Brown supplied the ale to Healy upon a contract of sale, to be resold by Healy in the course of his business as a retail liquor dealer, although on the understanding that Brown was to remain the owner until paid for, yet the delivery under such contract would pass the title of the ale, immediately, upon the ground that such delivery would be inconsistent with the continued ownership of the vendor.

THE COURT.—I so charge.

IV. That there is no evidence in this case to authorize the jury to find that there was any storage relation between Brown and Healy in relation to this ale.

THE COURT.—There was no storage relation between Brown and Healy within the technical definition of the term, because Healy was not a store-house keeper; but I decline to charge that there was no agreement creating the relation, and leave it to the jury to say what agreement was made (if any), between the parties respecting storage; to which the defendants' counsel excepted.

V. To constitute a storage relation, it would be

necessary that an agreement should have been made between Brown and Healy, by which Healy was to store the ale for Brown. And that such relation cannot be created without some agreement.

THE COURT.—I so charge that there must be·an agreement, express or implied, in all cases, to create the relation referred to.

To which the defendants' counsel also excepted.

I have endeavored, gentlemen, to make this case as clear to you as possible, in view of the numerous questions and conflicting evidence, and I fear the numerous requests put by the respective counsel have not aided my design, but you are to derive whatever benefit and instruction they furnish.

The jury thereupon retired to agree upon a verdict.

After they were out, the defendants' counsel asked the court to note a further exception to that portion of the charge, holding that the case of Herring v. Hoppock, in 15 *N. Y.* was applicable to this case.

THE COURT.—I did not so charge. I simply said that the court of appeals had made that general ruling in regard to conditional sales, and I especially charged the jury about the distinction between goods to be kept on hand like a safe, and those to be consumed or sold. To avoid any dispute, however, I will send for the jury and re-instruct them. The officer will bring in the jury.

The jury were accordingly returned to their seats in the box.

THE COURT.—The counsel differs with me as .to what I instructed you, and I am going to endeavor:to make myself so clear that no one can possibly misunderstand me, and I hope I may succeed in doing it. The case of Herring v. Hoppock, which I read to you

(the court reads it again), is to be deemed modified by the opinion of Judge ALLEN in Ludden v. Hazen (which the court reads again), and this latter decision I charge you to be especially applicable to this case.

Let me repeat, that if these ales were to form part of Healy's stock in trade as a retail dealer and were to be used or sold by him, as he used and sold other portions of his stock, the plaintiff cannot recover. I cannot make myself understood any plainer than that.

*A Juror.*—That's what you charged us before.

THE COURT.—It is certainly what I intended to charge you.

The jury rendered a verdict for the plaintiff.

This charge was approved, and the verdict sustained by the New York common pleas, general term. In consequence of the number of trials had and appeals previously taken the taxable costs aggregated about $1,800.