Smith, P. J.
The we view the case, the only question presented by the appeal, is whether the transaction between the parties amounted to an absolute, present sale, or whether, as the plaintiffs contend, it was a mere executory agreement to sell, or at most, a conditional sale and delivery, which did not pass the title, the condition not having been performed. It is not a case where a sale absolute in form is sought to be avoided by the vendor on the gromid that it was procured by fraud on the part of the vendee. Nor is it the case of a sale followed by a conditional delivery, for according to the finding of the referee, the delivery was of the same character as the sale, whether conditional or absolute. The question thus presented depends upon the intent of the parties; and their intent is to be learned from the written agreement, primarily, and if that leaves it in doubt, light *316 may be sought' from the extrinsic circumstances established by the evidence. Smith v. Lynes, 1 Seld., 41; Furniss v. Hone, 8 Wend., 356.
The agreement alone does not make the intent entirely clear. It starts out with words which, of themselves, import an absolute sale. They are restricted, however, by the subsequent proviso, which requires prompt payment of the checks. The proviso in turn, is modified by the succeeding clause which specifies, as the consequence of a default in making payment as the proviso requires that the property of the makers of the judgment note shall be subject, immediately, to the lien of the judgment authorized thereby as security for the payment of the debt. The clause is broad enough to embrace the goods in question, and to authorize the creating óf a lien thereon by judgment and execution against Dessau & Co. If that was the intent, the title of course passed, as otherwise,- the lien stipulated for could not have existed.
That construction satisfies the.. language of the entire agreement, except, possibly, the words, “pending the sale of our interest in the above store,” which are contained in the clause last above referred to. Those words, if read alone and literally, might repel the inference of a sale that was to take effect immediately. But, in agreements of this nature, the intention of the parties is to be collected from the whole instrument. And to that end the literal import of particular words used may be. disregarded. Kelley v. Upton, 5 Duer., 336.
We consider the whole effect of the clause of which those words are a part, as being, that while the debt contracted in the sale was pending, i. e., so long as any part of it remained unpaid, the plaintiffs, although holding the twin checks, might resort to judgment and execution whenever they deemed it to their interest, to do so. By the next preceding clause they had the right to enforce the stipulated remedies whenever default was made in the payment of either of the checks; the clause in question gave them the like right (whether either of the checks was due or not) whenever they deemed themselves insecure, so long as any part of the debt remained unpaid.
This construction of the agreement is aided by certain attendant circumstances. The fact that at the time of the transaction Dessau & Co. intended to sell the goods in their business as retail merchants, the plaintiffs knowing that-such was their intention, has an important bearing. Indeed there is authority for saying that such purpose was so-inconsistent with the continued ownership of the plaintiffs, that the transaction cannot be upheld as a conditional sale. (Ludden v. Hazen, 31 Barb., 650), was the case of a *317 purchase of a quantity of liquors to stock a retail grocery. A writing was executed, stating that the liquor was to be the property of the seller until paid for, and the transaction was found by the trial court to be a conditional sale. But it was held on appeal that it could not be upheld as such, and that by the contract of sale and delivery of the liquors to the purchaser to make a part of his stock in trade, and to be retailed to his customers, the property vested in him and became liable for his debts. To the like effect is Devlin v. O’Neill, decided by the New York common pleas, and reported in 6 Daly, 305. That case was affirmed by the court of appeals, but upon what ground does not appear by the report in 68 N. Y., 622, all that is stated being, that the court concurred in the result.
A distinction is to be observed between cases where the party to whom the property is delivered is to retail it as his own, and those where he is to deal with it as the agent or bailee of the vendor. Of the latter class, are Strong v. Taylor (2 Hill, 326), and Cole v. Mann (62 N. Y., 1). In the former a canal boat was agreed to be sold for a stipulated sum, provided the vendee should pay the amount in freighting on the canal under the direction of the vendor. The boat was regarded by the court as the property of the vendor, while in the possession of the vendee for the purpose of paying for it in the manner stipulated. In Cole v. Mann (supra), a piano was consigned to a person who was a dealer in pianos to be his when paid for. - He was authorized to sell it, provided he remitted the proceeds immediately to the consignor, or made the sale conditioned," and took from the purchaser a note similar to the one he had given, recognizing the ownership of the consignor. Held, that title did not pass till the condition was complied with. The same distinction was recognized in Herring v. Willard (2 Sandf. S. C. R., 418). There was a sale and delivery of an iron safe, on condition that title should not pass, till paid for. Held, that the title remained in the vendor, the condition not having been performed. Oakley, Oh. J., in delivering the opinion of the court, said: “It is not like the case of property placed in the hands of one who keeps similar articles for sale; as goods deposited with a merchant or trader.” P. 420.
In the present case, there is no.finding or proof, that Dessau & Oo. were to retail the goods as the agents of the plaintiffs, or to account to them for the proceeds, or to dispose of the goods in any other manner, than in the usual way of merchants retailing their own goods on their own account. And, as the evidence shows in that controversy, that is what they proceeded to do. This view of the facts is decisive of the case. That there are adjudications recognizing the doctrine, that on a sale of personal property, *318 there can be a delivery, and yet the vendor retain the title, cannot be denied. But to extend that doctrine to the case of a purchase of a stock of goods to be retailed by the vendee, as a merchant, on his own account, would be contrary to good principle and sound policy. Since the transaction in question took place contracts for the conditional sale of personal property, on credit, are required by statute to be filed in order to be valid as against subsequent purchasers, and in that respect are put upon the same footing as chattel mortgages. Laws 1884, chap. 315, as amended by Laws 1885, chap. 488; Laws 1886, chap. 495. But even a chattel mortgage upon a stock of merchandise, executed with the understanding between the parties that the mortgagor may go on and sell the stock and use the proceeds as his own, such understanding being carried out, has frequently been held to be void as against the creditors of the mortgagor. Edgell v. Hart, 5 Seld., 213; Southard v. Benner, 72 N. Y., 424. Those cases proceed upon the ground that such a transaction is necessarily fraudulent as against creditors, as it hinders and delays them, without securing the application of the property or its proceeds to the payment of the mortgage debt. The case of Ludden v. Hazen (supra) rests upon the same principle. For the same reason, the transaction in the case before us, if the title was intended to remain in the vendors, cannot be upheld as against the creditors of the vendees, although the act of 1884 does not apply to it. The defendant, as the general assignee of the vendees, represents the whole body of their creditors, and as such may defend against a claim which is fraudulent as to them. Southard v. Benner (supra).
Another circumstance that indicates very strongly an intent to pass the title is the transfer of the benefits of the insurance policies from the plaintiffs to Dessau & Co. by the direction of the former. It is difficult to account for the action of the plaintiffs in that respect, if they intended to retain the title to the insured property. On the other hand, it is difficult to see what insurable interest Dessau & Co. had in the property, or what motive for insuring it in their own name and at their own expense, if they had no title to it, and their possession was simply that of agents or bailees of the plaintiffs. But upon the assumption that the title was intended to pass, the conduct of the parties accords with their respective interests.
In Dresser Manufacturing Co. v. Waterston, (3 Metc., 9), one of the circumstances mentioned by the court as tending to show that the title was not intended to pass was the fact that by the agreement the goods were to be insured for the vendor’s account.
The question of title may be tested by inquiring upon *319 which party would the loss have fallen in case the goods had been burned after their delivery to Dessau & Co. Ballard v. Burgett, 40 N. Y., 317. It seems very clear that it would have been the loss of the vendees, and the transfer of the insurance shows conclusively that both parties so understood.
As the question of intent depends, to a considerable extent, on testimony outside of the written agreement, it is one of fact, in respect to which the findings of the trial tribunal are ordinarily conclusive, but in this case the conclusion of the referee seems to us clearly against the evidence, or the decided weight of it, and we are of the opinion that upon the whole case it appears that the parties intended that the title should pass, and that it did pass to the vendees on delivery, subject, of course, to the right of the vendors to rescind in case of fraud.
For these reasons, we think the judgment should be reversed and a new trial ordered before another referee, costs to abide event.
Haight, Bradley and Lewis, JJ., concur.