ANDREW H. FRANK, RESPONDENT, *v.* GEORGE W. BATTEN, APPELLANT.

*Conditional sales of personal property — valid as against creditors of the vendee — effect of the mingling and confusion of the goods in the course of manufacture.*

In an action, brought against a sheriff for an alleged unlawful levy upon property under an execution, it appeared that a short time prior to the levy the judgment-debtor purchased from three several parties three several quantities of lumber, with the understanding and agreement that the title to said lumber was to remain in the vendors; that the judgment-debtor was to act as their agent in getting the purchase-price of the goods which the judgment-debtor was to manufacture out of such lumber, from a party who was to purchase such goods and to pay over the purchase-price of the lumber to the vendors.

The lumber was manufactured into goods, and the various quantities of lumber were mingled together in such process of manufacture; they were thereafter levied upon by the defendant under an execution issued upon a judgment recovered against the vendee.

*Held,* that a sale and delivery of personal property on the condition that the title to the property is to remain in the vendor until the purchase-price is paid, is valid as between the parties and that no title vests, under such circumstances,

in the vendee, and the vendor, in case the condition is not fulfilled, has the right to repossess himself of the property, as against the vendee and also as against his creditors, should the latter cause the same to be levied upon under process issued to enforce the collection of their debts.

That the articles manufactured from the lumber so sold might, by agreement of the parties, in like manner, remain the property of the seller of the lumber until payment was made therefor.

That the vendee, under such circumstances, is entitled to the possession until the day of payment is passed and until the vendor repossesses himself of the property.

That the creditors of the vendee may levy upon the property and pay the vendor the purchase-price thereof on behalf of the vendee, and thus secure to themselves every interest, legal and equitable, which the vendee has in the property.

That where the property is sold or delivered to the buyer for consumption or sale or to be dealt with in any manner inconsistent with the continued ownership of the seller, in a manner which would necessarily destroy his right of property, the rule does not apply, and the vendor is estopped from setting up title in himself as against the creditors of the vendee.

That the fact that in this case the manufactured articles were made from the lumber taken promiscuously from the different parcels sold and delivered to the vendee, it not appearing that it was done with the consent of the vendors, or that they were notified of the fact of the property being mingled in this manner, did not estop them from claiming title to any part of the same purchased from them, as against the judgment-creditors of the vendee.

That while the provisons of chapter 315 of the Laws of 1884, providing that all conditions and reservations as to continued ownership in the vendors, contained in contracts for the conditional sale of goods, accompanied by an immediate delivery to and followed by an actual and continued possession in the vendee, shall be void as against subsequent purchasers and mortgagees in good faith, contains no provision declaring the conditional sale void as against creditors, yet it is an expression of the public mind against the policy of permitting conditional sales of property to remain unpublished.

The facts in this case held to require the submission to the jury of the question, whether this sale was not a mere device resorted to in order to enable the vendee to hinder and delay his creditors in the collection of their claims.

APPEAL from a judgment, entered upon a verdict rendered at the Niagara Circuit in the plaintiff's favor, in an action for the conversion of personal property, and from an order denying the defendant's motion for a new trial, founded upon the judge's minutes.

The defendant was the sheriff of Niagara county, and he levied upon and sold the property in question, under and by virtue of an execution placed in his hands against the property of C. H. Turver, in favor of Frank Pinner. The verdict was for $544.06.

*E. M. & F. M. Ashley*, for the appellant.

*Elias Root*, for the respondent.

BARKER, P. J.:

At the time the defendant levied upon the property in question it was in the actual possession of the judgment-debtor named in the execution. The plaintiff claims that at that time he was the owner of part of the property, and that after the levy, and before the sale, he acquired title to the balance, by purchase, from persons who were the owners at the time of the levy.

The serious question presented is, whether the title to the property was in the plaintiff or Turver at the time of the sale? In 1886 Turver was a manufacturer of sash, doors and other building materials, at Suspension Bridge, in this State. A short time prior to the levy Turver purchased of one L. G. Fuller, a quantity of pine lumber, at the agreed price of twelve dollars per thousand, which, in the aggregate, amounted to the sum of $352, and the same was delivered to Turver at his factory. At the time of the sale Turver's credit was impaired and he was indebted to Fuller in the sum of about $1,000. Before the purchase was made Turver had received an order from one Stevens, a dealer in Baltimore, for a bill of goods such as he was engaged in manufacturing. When the lumber was purchased, it was agreed between Fuller and Turver that the title to the property and the articles into which it was to be manufactured, should remain in Fuller until the purchase-price was paid, and, also, the further sum of forty dollars, the latter to be applied upon the existing indebtedness due and owing Fuller. Fuller consented that after the lumber was manufactured into sash and doors, Turver might deliver the same to Stevens, upon his order, and out of the avails pay for the lumber and the said sum of forty dollars. In addition to the parol evidence, the plaintiff produced a paper, executed by Turver, at the time of the purchase, in which the said agreement was substantially stated, and is as follows: "L. G. Fuller is to send to me, to my mill, Suspension Bridge, two car loads of lumber at twelve dollars per thousand, to be made into frames and goods for G. O. Stevens of Baltimore. The title to said lumber is to remain in said Fuller. I, as his agent, am to get the money of Stevens and to pay over to Fuller. Said amount to be paid Fuller

shall be forty dollars more than the cost of lumber. This I agree to do within two months after this date."

A few days thereafter Turver made a similar contract with the plaintiff for a quantity of lumber, which was reduced to writing, and is as follows : " Frank & Co. is to ship to said Turver, lumber to the amount of $300; Turver is to make up sash, doors, blinds, frames, and ship to either Barber & Ross, of Washington, or F. D. Watkins & Co., or George O. Stevens, of Baltimore. Turver is to leave on said shipment, to the credit of Frank & Co, the full amount of price of lumber and $20 added to each $100 worth of lumber; said $20 is to apply on Turver's debt to Frank & Co. This I agree to. The title to said lumber is to remain in said Frank & Co. until paid for, as stated above."

About the same time another dealer sold and delivered to Turver a bill of lumber amounting to the sum of $113, on the same terms as those mentioned in the said contracts, except that nothing was to be paid by Turver out of the proceeds on the prior indebtedness. At the time of the levy most of the lumber had been manufactured into building supplies, of the character mentioned in the contracts, and a part thereof had been shipped upon the orders held by Turver and the balance was in said Turver's factory at Suspension Bridge. On the trial it was proved that the value of the property was equal to the amount of the verdict. At the time of the levy the plaintiff had received $100 towards the lumber which he sold and delivered, and the balance remained unpaid.

After the levy and before the sale the other vendors sold to the plaintiff all their right, title and interest in and to the property. This statement of the facts is sufficiently full for the purpose of considering the legal questions presented on this appeal. It has long been settled as the law of this State that a sale and delivery of personal property, on the condition that the title to the property shall remain in the vendor until the purchase-price is paid, is valid as between the parties; and that no title vests in the vendee. That the vendor, in case the condition is not fulfilled, has the right to repossess himself of the property, both as against the vendee and his creditors, who have caused the same to be levied upon under process issued to enforce the collection of their debts. The law permits, in such cases, a separation of the apparent from the real

ownership when the agreement is entered into in good faith. (*Herring* v. *Hoppock*, 15 N. Y., 409; *Ballard* v. *Burgett*, 40 id., 314; *Cole* v. *Mann*, 62 id., 1; *Coggill* v. *H. and N. H. R. Co.*, 3 Gray, 545.) The case at bar is clearly within the rule as stated in these authorities, and if the transactions under review were free from fraud, and made in good faith, the judgment should be affirmed.

The learned counsel for the appellant has, in his argument, sought to distinguish this case from those cited, and others affirming the same doctrine, on the ground that by the terms of the sale in this case the vendor consented that the vendee might, before the lumber was paid for, change the nature and character of the property by manufacturing the same into articles designed for trade and commerce, so that the property sold could not be traced and identified after it was manufactured into articles of merchandise, and would cease to exist as the thing sold.

It is true that a door made from a plank is quite a different thing from the plank itself, but, with little care, it could be readily ascertained from which parcel of lumber the door was made so long as the door remains in the possession or under the control of the vendee. We see no reason why the vendor may not, under the rule stated, as between himself and the vendee, make it a term of the contract of sale that the articles manufactured by the vendee from the property sold shall remain the property of the seller until the condition of payment is fulfilled. The vendee is a mere bailee of the property under such contracts whether it remains in the original or is changed into another species of property. The authorities are in support of these views.

In *Barrett* v. *Pritchard* (2 Pick., 512) "A" delivered wool to "B," taking his receipt, in which the quantity and price were stated, the same to be paid for in the future, to be manufactured into cloth, with the understanding, expressed in writing, that the wool, before being manufactured into cloth, and afterwards, should be the property of the vendor until paid for. It was held that this was a conditional sale, and that the title to the wool remained in "A" until after such payment, against "B's" creditors, although their demands accrued after such sale. (See, also, *Dresser Mfg. Co.* v. *Waterston*, 3 Metc., 9.) *Cole* v. *Mann* (62 N. Y., 1) was a case of a conditional sale, the title of the property to remain in the vendor until the goods

were paid for, and it was held that, although authority was given to the vendee to sell the property, provided he remitted the proceeds immediately to the vendor, or made the sale conditional, and took from the purchaser a note similar to the one he had given, recognizing the ownership to be in the original vendor, it did not operate to pass the title to the vendee. In the case at bar the vendee was to act as agent of the vendor, in receiving the proceeds of the sale and in the delivery of the manufactured goods to the persons mentioned in the agreements. The purchaser was not at liberty, by the terms of the agreement, to consume or destroy the lumber; the condition was, therefore, consistent with the title remaining in the seller. Under such an arrangement the rights of the creditors can be readily protected. The vendee is entitled to the possession until the day of payment has passed and until the vendor repossesses himself of the property. The creditors of the vendee may levy upon the property and pay the vendor the purchase-price in behalf of the vendee, and thus secure to themselves every interest, legal or equitable, which the vendee has in the property. But where the property is sold and delivered to the buyer for consumption or sale, or to be dealt with in any way inconsistent with the continued ownership of the seller, or in a manner which would necessarily destroy his right of property, the rule does not apply and the vendor is estopped from setting up title in himself as against the creditors of the vendee. *Ludden* v. *Hazen* (31 Barb., 650) is such a case; there a stock of goods was sold and delivered into the possession of the vendee, for the purpose of being resold by him at retail, and it was held that the transaction could not be upheld as a conditional sale as against creditors of the vendee. (See, also, *Devlin* v. *O'Neill,* 6 Daly, 305; affirmed in 68 N. Y., 622.)

The several lots of lumber were delivered to Turver at about the same time, and the manufactured articles were made from the lumber taken promiscuously from the different parcels sold and delivered to the vendee, but it does not appear from the evidence that either of the vendors consented to or was notified of the mingling of the property in this manner. If either of the sellers had consented to this confusion of the articles produced from the lumber, he would doubtless be estopped from claiming title to any part of the same as against the judgment-creditors of the purchaser.

As, by the terms of the several agreements, the title has not passed to the vendee, to any or either of the several parcels of lumber or to the articles manufactured therefrom, and the plaintiff has become the owner of all, we think, he may maintain the judgment if the respective contracts were made in good faith.

But the defendant insists, and made the point on the trial, that the condition of payment imposed by two of the respective vendors, Frank and Fuller, was colorable only, and was a mere device resorted to by them and the vendee, for the purpose of enabling the latter to keep away his creditors, and hinder and delay them in the collection of their debts, and asked permission to go the jury on that question, which the court refused; to which ruling he took an exception. If such was the intention and purpose of the parties, then, as against the defendant, who in this action represents the judgment creditors of the vendee, the condition is not available to the plaintiff, and the title will be deemed to have vested in the vendee. The legal proposition, as thus stated, cannot be disputed. Fraud vitiates all contracts as against parties whose legal rights are affected thereby, and will be avoided and annulled at the instance of the defrauded party. (*Coggill* v. *H. and N. H. R. Co.*, 3 Gray, 549; *Ludden* v. *Hazen*, 31 Barb., 650.)

We incline to the opinion that a case was made for the consideration of the jury on this question, and that they would have been justified in reaching the conclusion that the agreement with the plaintiff, as well as the one made with Fuller, was merely colorable, and the conditions mentioned were inserted in those agreements for the purpose of hindering and delaying the creditors of the purchaser in the collection of their debts. In the plaintiff's contract, the bargain contained terms, which do not usually accompany conditional sales, and they are such as 'to naturally excite suspicion in the minds of the creditors of the vendee, as to the integrity of the transaction. In disposing of the question of fraud, every feature of the transaction is to be considered, including the fact that the vendee acquired actual possession and had the apparent title to the lumber and the articles into which it was manufactured.

The value of the property was increased by the labor bestowed upon it by the vendee, and in this new form he was authorized,

under the contract with the plaintiff, to ship the same beyond the jurisdiction of the State before paying for the goods and securing title to the property in himself. By the terms of the contract he might pay the vendor the purchase-price in full and yet have no title to the property, if the sum stipulated to be paid on the prior indebtedness remained unpaid. This arrangement would enable the vendee, after paying for the property in full and adding to its value, by the expenditure of labor and money, to keep his creditors from seizing and selling the same in satisfaction of their demands.

It also afforded him an opportunity to remove the property beyond the reach of the process of the courts of this State, when, in fact, his equitable interest in the property would be nearly equal to its entire value. By a series of arrangements of this character the vendor could secure to himself the entire value of the vendee's labor and the profits of his business until his prior indebtedness was fully paid, to the exclusion of all the other creditors of the vendee, and he would incur no risk or hazard by such arrangement. If upheld as valid, it will constitute a novel way of securing the payment of a debt out of the future earnings of an insolvent debtor, to the exclusion of all his other creditors. While such an arrangement does not violate any positive rule of law so far as it provides for securing the vendor's prior indebtedness out of the property sold, yet the transaction possesses all the features and objections which exist against an unrecorded pledge or chattel mortgage.

By a statute passed before these contracts were made (Laws of 1884, chap. 315), it is provided that every contract for the conditional sale of goods and chattels, which shall be accompanied by an immediate delivery and be followed by an actual and continued possession of the things contracted to be sold, all conditions and reservations which provide that the ownership of such goods and chattels shall remain in the person so contracting to sell the same, or other person than the one so contracting to buy them, until such goods or chattels are paid for, or until the occurring of any future event or contingency shall be absolutely void as against subsequent purchasers and mortgagees in good faith. And as to them, the sale shall be deemed absolute unless such contract for sale, with such conditions and reservations therein, or a true copy thereof, shall be filed in a town or city clerk's office, the same as chattel mortgages are required to be filed. The act contains

no provision declaring the condition void as against creditors unless the same is filed. Yet it is an expression of the public mind against the policy of permitting conditional sales to remain unpublished as against mortgagees and purchasers in good faith.

In view of all the facts and circumstances, I think a case was made from which the jury would have been justified in reaching the conclusion that the transaction was entered into between the parties for the purpose of cheating, hindering and delaying the vendee's creditors in the collection of their debts. As a matter of law, the court cannot say that such was not their purpose.

If either of the contracts was void, then the judgment should be reversed, although the others were entered into in good faith, for the recovery was for the value of the entire property levied upon and sold by the defendant, without any distinction being made as to who was the vendor.

The judgment and order should be reversed and a new trial granted, with costs to abide the event.

HAIGHT, BRADLEY and DWIGHT, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide event.