(17 Misc. Rep. 78.)

ELLIOTT et al. v. LUENGENE.

(City Court of New York, General Term. May 7, 1896.)

1. VERDICT—AFFIDAVIT OF JURORS TO SUSTAIN.
   The affidavits of jurors that they did not read a paper improperly taken by them to the jury room is competent to sustain the verdict.
2. SAME—ALLOWING JURY TO TAKE PAPERS.
   Where the jurors were allowed to take to the jury room a paper not in evidence, the verdict will be set aside, though the paper was given to them by mistake.

Appeal from trial term.

Action by Richard W. Elliott and another against Charles H. Luengene. There was a judgment in favor of plaintiffs, and defendant appeals. Reversed.

Argued before VAN WYCK, C. J., and McCARTHY, J.

Edward Cromwell, for appellant.
Abram Kling, for respondents.

McCARTHY, J. We shall first consider the point raised by the appellant, both at the time of the trial, and on the motion made thereafter at special term, for a new trial on the ground of irregularity, in that improper communication was had with the jury dur-

ing their deliberation; that, without the knowledge or consent of the appellant, the plaintiffs or their attorney caused to be handed to the jury a paper not in evidence on the trial, which paper was taken by the jury into the jury room, and brought back by them on the rendition of their verdict. The procedure here was a proper one. McAdam, J., Valiente v. Bryan, 66 How. Prac. 302. The plaintiffs on their own behalf seek to recover on the first cause of action, and on the second cause of action as assignees of Vogel & Co., on the ground that the merchandise in each instance was consigned to the defendant; that demand for the return thereof, or the amount realized therefrom, was made in each instance, and was refused, and in consequence thereof the defendant has converted said merchandise, to their damage. The defendant, in effect, denies each and every allegation. At the trial it was admitted that the defendant and plaintiffs, as well as Vogel & Co., who had assigned their claim to plaintiffs, had many previous transactions; but the defendant contended throughout the trial that all his transactions with them were for goods actually purchased by him, and sold to him by the plaintiffs and Vogel & Co.; that at no time were any goods consigned to him, nor did he make any request for the same. Some exhibits were offered in evidence and marked, and others were only marked for identification. Among those papers on behalf of the plaintiffs was one known as "Exhibit A," and which had been admitted against defendant's objection, under the following testimony:

"Q. Did you at that time, when these goods were so given to him, make any memorandum or entry in your books—the original entry—as to the terms upon which these goods were delivered? (Defendant's counsel objects. Admitted. Defendant's counsel excepts.) A. Yes, sir. Q. Is this a list of the goods that are spoken of in your testimony? (Paper shown witness. Defendant's counsel objects.) A. Yes, sir. (List referred to offered in evidence. Defendant's counsel objects as immaterial, irrelevant, and incompetent.) Plaintiff's Counsel: I offer it merely as a matter of convenience. (Admitted. Defendant's Counsel excepts. Marked 'Plaintiffs' Exhibit No. 1.')"

The book of original entry was not offered in evidence, nor was this exhibit said to be a true copy thereof, but only a list of the property testified to; and yet on its face, without explanation, it bore more than a mere list, and assumed to give the terms of the alleged contract between the parties, with the amount consigned, and the credits of goods returned, and the balance remaining. On its face it presents the conclusions of some one, or the maker thereof, of the standing of the defendant, since it gives the date and items of delivery of the goods as June 8, 1892, and the credits as for the goods returned, July 2, 1892. It was not a paper received by the defendant so as to bind him by the words, "Terms on memorandum," and therefore was certainly improperly received and admitted in evidence. But, irrespective of the propriety of its admission in evidence, it was there with all its force and effect, and being the original evidence of the contract, as alleged by the plaintiffs. Another exhibit which was only marked for identification was "Exhibit C." That was identical with "Exhibit A" in evidence,

except as to the date and items, and containing these words: "Terms net cash." Exhibit E was in evidence, as follows:

Plaintiffs' Exhibit E.

Elliott & Cougle, No. 52 Elizabeth St.

New York January 6, 1892.

Charge to ——. Sent to C. H. Luengene, care A. H. King Co., Fulton street and Bedford:

On back what to come back if not sold.

Terms, 25 per cent.

| | |
|---|---:|
| 1 No. 91, B. & D., Old Eng., $83.00, 25 per cent., 20.75 | $ 62 25 |
| 1 No. 274, ½ Eng., B. & D., net | 55 00 |
| 4 Desks | 30 00 |
| 1 No. 380, 16th C. Suit | 22 50 |
| 1 No. 375, 16th C. Suit | 22 50 |
| 1 No. 32, Ex. Table, 8 ft. | 14 00 |
| 1 No. 76, Ex. Table, 8 feet | 16 00 |
| 1 No. 21, Ex. Table, 8 feet | 16 00 |
| 1 No. 62, Ex. Table, 8 feet | 18 50 |
| | $256 75 |

| | |
|---|---:|
| 1 No. 91, B. & D., Old Eng. | $ 62 25 |
| 1 No. 92, B. & D., Old mag... | 90 00 |
| 1 No. 93, B. & D., Old mag. | 90 00 |
| 1 No. 201, Ant. S. B.... | 100 00 |
| 1 274, ½ Eng., B. & D. | 55 00 |
| 1 No. 95, Eng. S. B. | |
| 1 No. 96, Eng. S. B. | 90 00 |
| 1 No. 96, 16th C. | |
| | $487 25 |

Goods to be returned if not sold.

| | |
|---|---:|
| | $634 75 |
| 2 No. 29, Ant. Table, at $23 | 46 00 |
| 2 No. 27, Ant. Table, at $18.00 | 36 00 |
| 1 No. 71, Ant. Table, at 13.00 | 13 00 |
| 2           at $1.50 | 3 00 |
| | $732 75 |
| 2 No. 172, ½ Tables, at $12.50 | 25 00 |
| | $757 75 |

| | |
|---|---:|
| 1 No. 201, Ant. S. Board | $100 00 |

| | |
|---|---:|
| | $256 75 |
| 1 No. 80, 16th Cent. S. B. | 35 00 |
| 1 No. 23, Ant. S. B. | 30 00 |
| 1 No. 95, Eng. S. B. | |
| 1 No. 96, Eng. S. B. | |
| 1 No. 96, 16th Cent. | 90 00 |
| 1 No. 71, Ant. S. B.. | 16 00 |
| 2 No. 72, Ant. S. B., at $13.50 | 27 00 |
| 1 No. 92, Mahog. B & D. | 90 00 |
| 1 No. 93, 16th B. & D. | 90 00 |
| | $634 75 |

Here, then, we have three exhibits, if all were properly admitted, showing on the face thereof different terms, and distinct terms. It is admitted that Exhibit C (for identification) was, with the other

two in evidence, handed by the plaintiffs' attorney to the court officer who had charge of the jury, on their leaving the court room for deliberation, and was taken by them into their room. It is also the fact that on their return from their deliberations, and after arriving at a verdict, they returned to the court the three exhibits already spoken of, and among these was Exhibit C (for identification), at the same time announcing their verdict. The defendant, immediately upon this discovery, made his motion to discharge the jury. The trial justice, however, received the verdict, against the objection of the defendant. Immediately thereafter the defendant again renewed his motion, and the trial justice took the motion under advisement. Having received the verdict against the objection of the defendant, the trial justice lost jurisdiction, ·and the only way the defendant could then have the motion considered was to apply at special term,—Moore v. Railroad Co. (Com. Pl.) 8 N. Y. Supp. 329,—which he did, and the same was considered by the same judge sitting at special term. This motion was denied on the grounds, particularly, that the taking of the paper aforesaid did no harm to the defendant. This is the question first to be determined. From a careful examination of the testimony, it is clear that the jury must have considered this paper, Exhibit C, because, before retiring, one of the jurors asked:

"What relation have the bills in evidence to the case? The Court: You have a right to take them into consideration. The bills are not conclusive. They are simply evidence of the transaction had between the parties. Plaintiff's Counsel: In no event are these bills to be regarded bills of sale. The Court: They are not bills of sale; undoubtedly not. Defendant's Counsel: I except to that, and ask your honor to charge that the bills themselves show they are bills of sale. A paper which says 'Sold to,' or 'Bought of,' constitutes a bill of sale, in law. The Court: I decline to charge that they are bills of sale, in law. (Defendant excepts.)"

Again, after the jury had retired, a written communication was sent by them to the trial justice, as follows:

"Were not the plaintiffs obliged to mark the words 'on memorandum,' or 'on consignment,' on the bills rendered, so as to make the same really a 'consigned account'?"

To which the court answered, "No."

The jury had before them then a paper marked, "Terms on memorandum"; another marked, "Terms net cash"; and a third paper marked, "Charge to ————. Terms 25 per cent. On back what to come back if not sold." The defendant had absolutely denied that any goods were consigned to him at any time, and that the words on Exhibit E, "What to come back if not sold," were not written in his presence, nor with his consent or knowledge, and that the entire bill was a purchase and sale. The jury were no doubt considering the defendant's oral testimony, and the variety and difference of the written testimony, in regard to the terms, and when comparing the words, "Terms 25 per cent.," on Exhibit E, and which was claimed by the plaintiffs to be evidence of a former consignment of goods, with the words, "Terms net cash," contained in Exhibit C (for identification), which was conceded to be an absolute sale; and, being in

doubt, they were led, in order that they might determine from all the evidence in the case as to whether these transactions at issue were a sale or consignment, to inquire why Exhibit E, if it was a consignment, did not contain the words, "on memorandum," or "on consignment," on the bills rendered, so as to make same really a consignment account. The court answered "No," and this ended the discussion. The paper was then before them in the jury room, seen by some, and perhaps by all, of them; and the presumption must be, in the absence of more convincing proof to the contrary than that presented, that it was read, wholly or in part, and referred to, by some one of those who saw it. It was competent for the plaintiffs to offer the affidavits of the jury to sustain the verdict by showing that the paper was not read. This the plaintiffs omitted to do. I am convinced, from a careful examination of the evidence, and the taking of this paper by the jury into their room, that it was examined, considered, and had an important influence on their verdict. See Mitchell v. Carter, 14 Hun, 448; Dolan v. Insurance Co., 22 Hun, 404; O'Brien v. Insurance Co., 38 N. Y. Super. Ct. 482. I am satisfied that this paper was not intentionally given to the jury by the plaintiffs' attorney, and was given only in the manner stated by him. It was still a serious mistake, and an improper communication to the jury, and one for which the verdict should be set aside. The tendency is to look with distrust upon all irregularities and communications with jurors, either at the trial, or after they have withdrawn to their room to consider the verdict. The verdict, for these reasons alone, should be set aside, and a new trial granted, with costs to the defendant to abide the event.

The defendant has taken many exceptions during the trial, and we now proceed to examine a few of them:

The admission of Exhibit A, after it was once rejected by the court as a list of the articles, was error, since it was not to refresh the witness' recollection, and not made by him, and purported to state the manner and terms of the contract alleged by the plaintiffs, without any proof of its origin, or being signed or sanctioned by the defendant. Bank v. Madden, 114 N. Y. 280, 21 N. E. 408; Rosenstock v. Heggarty (City Ct. Brook.) 13 N. Y. Supp. 228; Joslyn v. Pulver, 59 Hun, 136, 13 N. Y. Supp. 311; Donlon v. English, 89 Hun, 69, 35 N. Y. Supp. 82. Again, the following rulings and questions appear:

"Q. Did you on that occasion state to Mr. Elliott that you wanted any goods on consignment? (Plaintiffs' counsel objects. Objection sustained. Exception.) Q. Was there anything said by you to Mr. Elliott, that you wanted goods on consignment? (Plaintiffs' counsel objects. Objection sustained. Exception.) Q. Did he say anything to you, that he wanted to let you have goods on consignment? (Plaintiffs' counsel objects. Objection sustained. Defendant excepts.)"

The only issue was whether the defendant had purchased the goods, or received them on consignment, and the plaintiffs had related conversations claimed to have been had with the defendant, in which the subject of consignment was spoken of. It was therefore proper and pertinent for the defendant's counsel to ask whether

he (the defendant) had any such conversation, or whether the plaintiffs had ever spoken to him about the same. We think this was error.

Again, when the judge had finished his charge to the jury a juror asked:

"What relation have the bills in evidence to the case?"

The court answered:

"You have a right to take them in consideration. The bills are not conclusive. They are simply evidence of the transaction had between the parties."

This was correct, and, had the judge stopped there, would have been all right, but the plaintiffs' counsel said:

"In no event are these bills to be regarded bills of sale. The Court: They are not bills of sale; undoubtedly not."

To which the defendant excepted.

It was conceded that the numerous items on each of the bills had been delivered and accepted; except the ones alleged to have been consigned, were purchased by the defendant, and sold to him. The rule is that such papers, containing the words "bought of," or "sold to," unexplained, and unaccompanied by delivery and acceptance, become such a contract, or the written evidence of the contract of sale, within the intention of the parties, and entitled to such effect. Bonesteel v. Flack, 41 Barb. 435; Coe v. Tough, 116 N. Y. 273, 278, 22 N. E. 550. The defendant's request to charge, immediately following this, was too broad, and not the law.

After the jury retired the following communication in writing was sent to the court:

"Were not the plaintiffs obliged to mark the words 'on memorandum,' or 'on consignment,' on the bills rendered, so as to make the same really a 'consigned account'?"

To which the court answered, "No."

"Defendant's Counsel: In connection with the question asked by the jury, and the answer by the court thereto, we request the court to charge that the words 'on memorandum,' or 'on consignment,' not being written on the two bills, is a circumstance which the jury may take into consideration in determining the question whether the transactions in question were sales, or were merely consignments. The Court: I decline so to charge. (Defendant's counsel excepts.)"

This request should have been allowed, since the trial justice had already charged that they had a right to take the bills into consideration, and that they were not conclusive; having before them a bill (Exhibit A) marked "Terms on memorandum," which contained the items of goods claimed by Vogel & Co., and another bill which represented the portion claimed by the plaintiffs, and which occurred in January, 1892, and which the plaintiffs say was a consignment, but which only contained the words "Terms net." The jury, having the whole evidence before them, had a right to consider these omissions, in determining the question whether the transactions before them were sales, or merely consignments.

For this, and the errors already pointed out, the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.