(20 Misc. Rep. 18.)

ELLIOTT et al. v. LUENGENE.

(City Court of New York, General Term. April 1, 1897.)

1. TRIAL—REMARKS OF COUNSEL—REFERENCE TO FORMER TRIAL.

A statement by counsel at the opening "that an appeal from a former trial of this case was taken by the defendant" is not equivalent to a statement of the course and result of the former trial, so as to require a reversal.

2. WITNESS—EXAMINATION TO SHOW BIAS.

The assignor of a cause of action, having been asked on cross-examination if he had any interest in the result of the action, stated that he had, and that, if any money was coming to him, he should like to have it. Held, that it was proper to ask him further how any money was coming to him, where counsel stated that the purpose of the question was merely to show that the witness was interested.

Appeal from trial term.

Action by Richard W. Elliott and William R. Cougle against Charles H. Luengene. From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before FITZSIMONS, McCARTHY, and CONLAN, JJ.

Jacob Fromme, for appellant.

Abram Kling, for respondents.

McCARTHY, J. The principal issue between the parties herein was whether the goods claimed were sold or consigned to the defendant. The evidence was conflicting, and the jury, under a fair and impartial charge, having found against the defendant, and in favor of the plaintiffs, settles the question so far as we are concerned.

We are, then, to consider the question of irregularity raised, and the exceptions taken at the trial. We, of course, can only pass on

the record before us, and do not think there is sufficient to urge us in the matter of the irregularity claimed, and particularly under the statement of the court, as follows (when a motion was made to discharge the jury):

"The Court: I will instruct the jury that they will disregard anything said by the plaintiffs' counsel .concerning a former trial of this case, and its results, and that the jury will only consider the facts and circumstances that are concerned in this case, as the witnesses will bring them out in their testimony, and that alone they will consider."

It was and would be improper for the plaintiffs' counsel to state to the jury the course and result of the former trial, and, if such a statement appeared in the record, it would have been sufficient to reverse the judgment; but we do not think the statement of the plaintiffs' counsel at the opening, as appears by the record, "that an appeal from a former trial of this case was taken by the defendant," is sufficient.

The testimony of Stahl, at the close of the case, was, in some respects, in contradiction of the defendant, and therefore rebuttal. The admission of this and the rest was within the sound discretion of the court (Fell v. Locomotive Works [Sup.] 3 N. Y. Supp. 381); and we do not think it was improperly exercised. Agate v. Morrison, 84 N. Y. 672.

A witness, a member of the firm of F. Vogel & Co., who assigned the first cause of action to the plaintiffs, was being examined, and said he assigned it. At folio 40, p. 14, the following took place during his examination:

"Q. I ask you again whether or not you have any interest in the result of .this litigation? A. Yes, sir; that interest is satisfaction. If there is any money coming to me, I should like to take it. Q. How is any money to come to you? (Objected to as incompetent, and, further, that the answer to the complaint failed to allege that the plaintiffs were not the real parties in interest.) Defendant's Counsel: I don't ask the question for the purpose of setting up any such defense, but I ask it for the purpose of showing to the court and the jury that this witness is an interested witness; that he is interested in the result of the action. The Court: I will sustain the objection. (Defendant's counsel excepts.)"

This was error when the purpose was explained by the defendant's counsel. It was to attack the witness' interest, and thus his credibility. The bias of an assignor may be shown by proof of a remaining or a contingent interest (Abb. Tr. Brief, p. 10); and a party who assigns a claim and becomes a witness to prove it places himself in a position where his evidence is to be looked at with more doubt than in other cases, for, when such person is contradicted on a material matter, he cannot complain that credit is withheld from him (Watkins v. Cousall, 1 E. D. Smith, 65, 66); and the credibility of the witness is a matter to be submitted to the jury for their determination (Condit v. Sill [Com. Pl.] 18 N. Y. Supp. 97; Gildersleeve v. Landon, 73 N. Y. 609; Wohlfahrt v. Beckert, 92 N. Y. 490; Kelly v. Burroughs, 102 N. Y. 93, 6 N. E. 109).

Again, at page 19, folio 55, the following took place:

"Q. The juror asked you whether there was an original bill sent previous to this one. Did you see any bill prepared in your establishment about the

time these goods were sent away? A. Yes, sir. Q. Look at the paper which I show you, and state whether or not it is a copy of the bill which you saw prepared at that time (presenting paper). A. Yes, sir; I saw the bookkeeper write it. Q. Did you see the bookkeeper prepare the original of that, or a copy of it? A. Yes, sir; I was in the office all the time, and I told him what to do.. Q. Did you see that bill delivered to the carman, to be delivered to the defendant, or a copy of it? A. The bill was sent by mail. I did not mail it. I saw it mailed. The bookkeeper mailed it. Plaintiffs' Counsel: I offer in evidence a copy of this paper. By Defendant's Counsel: I said it was mailed at the corner of Canal and Bowery,—the southwest corner,—on the evening of the second of July, at about six o'clock in the evening. I saw this paper mailed. Something else was mailed at the same time. I guess that four or five hundred statements went out at that time. After the bookkeeper had written it, the correspondence was put into an envelope. Everything was separate. Q. Was this mailed at the time (presenting Defendant's Exhibit No. 1)? (Objected to, unless it was in relation to the paper spoken of. Objection sustained. Defendant excepts.)"

The defendant's counsel, on cross-examination, had already identified by the witness, and had marked in evidence, Exhibit No. 1, dated July 2, 1892, as coming from the witness' firm, and this contained some of the goods which the plaintiffs claimed were consigned goods, and which defendant claimed were sold. It bore the words "Terms net." The plaintiffs were endeavoring to show at the time that another paper, afterwards marked "Plaintiffs' Exhibit A," in evidence, against defendant's objection, had been sent by mail on July 2, 1892, to the defendant. This paper was dated June 8, 1892, and contained credits, with these words, "Goods returned July 2, 1892." The defendant was called upon to produce the original bill said to have been sent, and answered that he did not receive such bill, and therefore could not produce it, and that the notice to produce was defective. A notice to produce all the bills, etc., was proven, as having been served on the defendant; and we think it was sufficient, but the plaintiffs' attorney, when he offered in evidence the copy of this paper, must have conceded that his proof was lacking, since the defendant's counsel proceeded then to cross-examine without objection. He had a right to test the memory of the witness, and to show that Defendant's Exhibit 1 was the paper which the bookkeeper made out, and put in the envelope, and afterwards mailed. Defendant's Exhibit 1 was dated July 2, 1892, and Plaintiffs' Exhibit A was dated June 8, 1892, but contained the words and letters, "Cr. Goods returned July 2, 1892." It is true that either one or both of these bills might have been mailed on July 2, 1892, but the importance of the testimony to the defendant was to contradict the witness as to which bill was mailed, for one contained the words "Terms net," which defendant claimed meant a sale, and the other "Terms on memorandum," which plaintiffs claimed meant a consignment.

Again, at pages 24 and 26 the following occurred:

"By Plaintiffs' Counsel: Q. There appears to be here a bill dated July 2, 1892; who prepared this? A. Mr. Vogel, who was the bill clerk, and also the bookkeeper. I knew about this bill having been sent before I saw it on the last trial. Q. What was meant by the 'Terms net' upon this bill, Defendant's Exhibit No. 1? Explain to the jury how the word 'net,' after the word

'Terms' on Defendant's Exhibit No. 1, came to be used? Defendant's Coun-
sel: I object as incompetent, and upon the ground that the word 'net' on the
bill head is not capable of being explained by this witness. (Objection over-
ruled. Defendant excepts.) Defendant's Counsel: I object further upon the
ground that it is incompetent for the witness to give any conclusion of any
statement of fact. (Objection overruled. Exception.) A. It was done so
that Mr. Luengene would not be allowed any discount of the amount of the
sale of goods. For instance, take 103, hall stand, which is marked $43. The
price of that originally was $67, and 10 per cent. off for cash would bring that
amount down too low, so that it was marked down; and that was the object of
leaving the word 'net,' so that the defendant would not expect any percentage
off. By the Defendant's Counsel: Previous to this time we had put in the
word 'net' on bills which were subject to litigation. We put the word 'net'
on every bill of goods of the 1,461 dollars. Defendant's Counsel: I offer
this paper for identification. (Paper received, and marked 'Defendant's Ex-
hibit No. 2,' for identification. This Defendant's Exhibit No. 2, for identifica-
tion, contained the words 'Terms net cash.') Defendant's Counsel: I now
offer Defendant's Exhibit No. 2, for identification, in evidence. (Same ex-
cluded. Defendant's counsel excepts.) Witness: The word 'net,' on Ex-
hibit 2, for identification, does not mean anything different from the word
'net' on Exhibit No. 1. I claim that the goods mentioned in Exhibit No. 2,
for identification, where the word 'net' is, were sold, and were not consigned.
(This was the bill for $1,461.)"

It is clear that this exhibit should have been admitted, since the
witness said that both Defendant's Exhibit No. 1, which contained
some of the goods claimed by the plaintiffs as consigned, but which
had the words thereon "Terms net," and the Plaintiffs' Exhibit No.
2, which was excluded, and had the words "Terms net cash," were
for goods sold, and not consigned. The defendant was therefore
entitled to have this exhibit, with the evidence, admitted for the
consideration of the jury.

We have reversed this case on a former trial (17 Misc. Rep. 78, 39
N. Y. Supp. 850), and therefore wish to say that it is not our desire
or wish to reverse, but where a clear and substantial error is com-
mitted, as in this case, it is right and just and best for all concern-
ed; and if, on the new trial, these errors can be avoided, a success
may be obtained which will stand. There are other exceptions
in the case, but we think these sufficient to cause our action.

Judgment and order is, for these reasons, reversed, and a new
trial granted, with costs to the appellant to abide the event. All
concur.